William C. Wilson, SBN: 149683
Email: bwilson@wilsongetty.com
Kim S. Cruz, SBN: 177406
Email: kcruz@wilsongetty.com
Ryan G. Canavan, SBN: 313990
Email: rcanavan@wilsongetty.com
Evan J. Topol, SBN: 274932
Email: etopol@wilsongetty.com
WILSON GETTY LLP
12555 High Bluff Drive, Suite 270
San Diego, California 92130
Telephone:   858.847.3237
Facsimile:   858.847.3365
Attorneys for Defendant LONG BEACH HEALTHCARE CENTER, LLC dba LONG BEACH HEALTHCARE CENTER (erroneously sued and served as LONG BEACH HEALTHCARE CENTER, LLC)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EBONY STONE, Individually and as heir and successor in interest to WALLACE DORSEY, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>LONG BEACH HEALTHCARE CENTER, LLC; DOES 1 to 50,<br><br>Defendants. | Case No. 2:21-cv-00326-JFW-PVCx<br><br>*[Removed from Los Angeles Superior Court Case No. 20STCV47199]*<br><br>**DEFENDANT, LONG BEACH HEALTHCARE CENTER, LLC dba LONG BEACH HEALTHCARE CENTER REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION AND MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f))**<br><br>Action Filed:   December 10, 2020 |

**TO THE HONORABLE COURT AND ALL PARTIES THROUGH THEIR ATTORNEYS OF RECORD:**

///

1

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE**
**Case No. 2:21-cv-00326-JFW-PVCx**

1   Defendant, LONG BEACH HEALTHCARE CENTER, LLC dba LONG BEACH

2   HEALTHCARE CENTER ("LBHC") hereby submits the following Reply to Plaintiff's

3   Opposition to Defendant's Motion to Dismiss (FRCP Rule 12(b)(6)) and Motion to Strike

4   (FRCP Rule 12(f)).

5

6   Dated:  March 15, 2021                    WILSON GETTY LLP

7

8                                          By: ___/s/ Kim S. Cruz_____

9                                                 William C. Wilson
                                                  Kim S. Cruz
10                                                Ryan G. Canavan

11                                          Attorneys for Defendant LONG BEACH
                                            HEALTHCARE CENTER, LLC dba LONG
12                                          BEACH HEALTHCARE CENTER (erroneously
                                            sued and served as LONG BEACH
13                                          HEALTHCARE CENTER, LLC)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE**
**Case No. 2:21-cv-00326-JFW-PVCx**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... i

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

    I.      SUMMARY OF ARGUMENT ..................................................................... 1

    II.     THE HHS PREP ACT DECLARATIONS AND ADVISORY OPINIONS ARE ENTITLED TO CHEVRON DEFERENCE ........................................ 1

    III.    THE PREP ACT PREEMPTS PLAINTIFF'S STATE LAW CLAIMS ................. 6

    IV.    PLAINTIFFS' CLAIMS FALL SQUARELY WITHIN THE PREP ACT ............. 8

    V.     CONCLUSION ....................................................................................... 12

1

# **TABLE OF AUTHORITIES**

2

## CASES

3

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 201 (2004) ............................................................. 4, 6

4

*Auer v. Robbins*, 519 U.S. 452, 461 (1997) ................................................................... 2

5

*Campbell v. Kane, Kessler, P.C.,* 144 F. App'x 127, 130 (2d Cir. 2005) ......................................... 7

6

*Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987) ................................................ 7

7

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 507 (2d Cir. 2017) .......................................................................................................................... 5, 6

8

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US 837, 843-844 (1984) ........... 2, 3, 5

9

10

*Garcia v. Welltower Opco Group, LLC*, 2021 WL 492581, fn 3 (C.D. Ca February 10, 2021) ........... 3

11

*Gilbert Garcia et al v. Welltower OpCo Group LLC,* 2021 WL 492581 .............................................. 10

12

*Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 157 (1991) ..................... 3

13

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005)....................... 5

14

*United States v. Mead Corp.,* 533 U.S. 218, 228-229 (2001) ................................................. 5

15

## STATUTES

16

42 U.S.C. § 247-6d(b)(4) ...................................................................................... 2

17

42 U.S.C. § 247d-6d(b)(1) ................................................................................ 2, 4

18

42 U.S.C. § 247d-6d(b)(7) ...................................................................................... 2

19

42 U.S.C. §247d-6d(a)(1)...................................................................................... 2

20

## REGULATIONS

21

85 Fed. Reg. 79190, 79194-79195 ............................................................................... 3

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  SUMMARY OF ARGUMENT

Plaintiff attempts to circumvent the PREP Act by suggesting that she alleges only a failure to use or administer covered countermeasures. Plaintiff adopts this rationale out of necessity—not reason. In doing so, she asks this Court to interpret the Complaint in a vacuum.  This contention is refuted by the Complaint, in which Plaintiff alleges Defendant was "not <u>properly</u> using personal protective equipment to prevent transmission of the illness." (Def's RFJN Ex. "A"- Complaint, pg. 8, ¶ 23.) [Emphasis added.] Plaintiff's allegations clearly pertain to whether Defendant properly utilized PPE and other covered countermeasures and how these measures were administered, distributed and used within the facility, which squarely invokes the PREP Act.  The Complaint does not describe instances of nonfeasance or total inaction, but instead alleges lapses in the standard of care.

No matter how Plaintiffs try to spin the allegations in this case, Plaintiff's claims "relate to" the administration of covered countermeasures, bringing their claims squarely within the preemptive and immunity provisions of the PREP Act.  In short, Defendant is a "covered persons" engaged in "recommended activities" involving the administration and use of "covered countermeasures" during the COVID-19 global pandemic and health emergency.

### II.  THE HHS PREP ACT DECLARATIONS AND ADVISORY OPINIONS ARE ENTITLED TO CHEVRON DEFERENCE

Plaintiff asserts that the "motion to dismiss makes clear that AO 21-01 [the January 8, 2021 Advisory Opinion] alone forms the entire basis for removal and dismissal. . ." This is not the case.  In addition to the PREP Act itself, and case law cited in support, the Motion is based on the COVID-9 pandemic PREP Act Declaration of the HHS Secretary and Amendments to the Declaration, and the Advisory Opinions ("AO") issued by the General Counsel for the Office of the HHS Secretary ("OGC"). The Secretary's Declaration, Declaration Amendments and the AOs are entitled to

1

deference pursuant to *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US 837 (1984).

The PREP Act empowers the Secretary of Health and Human Services ("HHS") to issue a declaration providing immunity for "covered persons" to suits and liability under federal and state law relating to the administration of a "Covered Countermeasure" during a health emergency. 42 U.S.C. §247d-6d(a)(1). Section (b) of the PREP Act provides that if the Secretary makes a determination that a disease or other health condition or other threat to health constitutes as public health emergency, the Secretary may make a declaration setting forth that subsection (a) is in effect with respect to one or more Covered Countermeasures under conditions as the Secretary may specify in the Declaration. 42 U.S.C. § 247d-6d(b)(1) and (4). The PREP Act further provides that "***[n]o court of the United States, or of any State, shall have subject matter jurisdiction to review, whether by mandamus or otherwise, any action by the Secretary under this subsection***." [Emphasis added.] Thus, under the PREP Act, Congress has not only provided immunity claims arising out of Covered Countermeasures, it has delegated regulatory authority to the HHS Secretary. See 42 U.S.C. § 247d-6d(b)(7).

Where Congress has expressly delegated interpretive authority to an agency, that agency's interpretative proclamations are controlling on the federal courts. See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US 837, 843-844 (1984). See also *Auer v. Robbins*, 519 U.S. 452, 461 (1997). As Congress has expressly delegated the duty to apply and interpret the Act to the Secretary, the Declarations of the HHS Secretary are entitled to *Chevron* deference.

The AOs are also binding on the Court, as the Secretary has now incorporated all HHS AOs pertaining to COVID-19 into the PREP Act's implementing Declaration and proclaimed that **the Declaration "must" be construed in accordance with the opinions**. 85 Fed. Reg. 79190, 79194-79195. Thus, the OGC AOs are no longer "advisory" as the opinions now have the same controlling weight as the Declaration and

the PREP Act itself.

Plaintiff contends that no deference should be given to the January 8, 2021 AO under either *Chevron* or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Plaintiff argues that Chevron deference cannot attach because by its very terms the Advisory Opinion is "not a final agency action or a final order" and "it does not have the force or effect of law"

The Court in *Garcia v. Welltower Opco Group, LLC*, 2021 WL 492581, fn 3 (C.D. Ca February 10, 2021), however has rejected such argument. In his ruling in *Garcia*, Judge James Selna found that the "Plaintiffs' interpretation of <u>Chevron</u> and its progeny is erroneous. <u>Chevron</u> is not black and white and the Supreme Court has made clear that courts are not faced with an option of complete deference or none at all. <u>Reno v Koray</u>, 515 U.S. 50, 61 (1995) (according 'some deference' to an interpretive rule that 'doe[es] not require notice and comment'); <u>Martin v. Occupational Safety and Health Review Comm'n</u>, 499 U.S. 144, 157 (1991) ('some weight' is due to informal interpretations though not 'the same deference as norms that derive from the exercise of . . . delegated lawmaking powers.')." Moreover, as noted above, the AOs are also binding on the Court as the Secretary has now incorporated all HHS AOs pertaining to COVID-19 into the PREP Act's implementing Declaration and proclaimed that **the Declaration "must" be construed in accordance with the opinions**. 85 Fed. Reg. 79190, 79194-79195. Thus, the OGC AOs are no longer "advisory" as the opinions now have the same controlling weight as the Declaration and the PREP Act itself.

Plaintiff further cites to *Dupervil v. Alliance Health Operations, LCC*, 2021 WL 355137 (E.D.N.Y. February 2, 2021), in urging the Court to disregard the January 8, 2201 AO. The claims in *Dupervil,* arose out of the death of plaintiff's decedent, who passed away after contracting COVID-19 while residing in the defendant's nursing home. Plaintiffs alleged that defendants failed to take precautions to prevent the spread of COVID-19 at their facility, which claims the court concluded, albeit erroneously, were not within the scope of the PREP Act.

However, the *Dupervil* Court took a further step and wholly rejected HHS' interpretation of the PREP Act as a complete preemption statute for claims falling thereunder. Instead, the court concluded that "the PREP Act does not completely preempt state-law claims within its scope." *Id.* at *9. LBHC urges this Court to reject the *Dupervil* Court's conclusion because *Dupervil* failed to afford proper *Chevron* deference to HHS' interpretation of the PREP Act. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 201 (2004).

The *Dupervil* court was not at liberty to simply disregard the PREP Act Declaration, and HHS' Advisory Opinions incorporated therein, as "unpersuasive". *Dupervil*, 2021 WL 355137, at *10. Indeed, the court recognized Congress' delegation of authority to HHS for application of the PREP Act through the COVID-19 Declaration, as amended, as well as the express incorporation of the Advisory Opinions into the Declaration. *Id.* at *2-3. This delegation of authority is explicit in the Act itself: "[i]f the Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency … the Secretary may make a declaration … recommending, under conditions ***as the Secretary may specify***, the … administration, or use of one or more covered countermeasures, and stating that [liability protections are] in effect with respect to the activities so recommended. [Emphasis added]." 42 U.S.C. § 247d-6d(b)(1).

Nonetheless, the *Dupervil* court summarily rejected the January 8, 2021 Advisory Opinion based on the statement that it does not "have the force or effect of law", ignoring Congressional intent and the Secretary's authority through the Declaration that supersedes such boilerplate language. *Dupervil*, 2021 WL 355137, at *10. However, even if the Advisory Opinion does not have the same force and effect as a legislatively-enacted statute, "it can still be apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to be able to *speak with the force of law* when it addresses ambiguity in the statute or fills a space in the enacted law", especially where the agency's reasoning is

-4-

valid. *United States v. Mead Corp.,* 533 U.S. 218, 228-229 (2001) (emphasis added). As such, "a reviewing court has no business rejecting an agency's exercise of its generally conferred authority to resolve a particular statutory ambiguity simply because the agency's chosen resolution seems unwise … but is obliged to accept the agency's position if Congress has not previously spoken to the point at issue and the agency's interpretation is reasonable…." *Id.* at 229. (Internal citations omitted); *Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984) ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

The Second Circuit in *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 507 (2d Cir. 2017), emphasized the importance of juridical deference where agency action is sound and reasoned. Therein, the court explained that under *Chevron,* the first question is: "'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Id.* at 507, *citing Chevron*, 467 U.S. at 842–43. If the statutory language is silent or ambiguous, however, courts proceed to the second step, where "'the question for the court is whether the agency's answer is based on a permissible construction of the statute'" at issue. *Id.*, citing *Chevron*, 467 U.S. at 843. If the agency's interpretation is not "'arbitrary, capricious, or manifestly contrary to the statute,'" *Id.*, *citing Chevron*, 467 U.S. at 844, the court will accord deference to the agency's interpretation so long as it is supported by a reasoned explanation, and "so long as the construction is "'a reasonable policy choice for the agency to make.'" *Id.*, *citing Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005).

The Court in *Catskill,* further acknowledged that Courts "must defer both to the Legislative Branch by refraining from reviewing Congress's legislative work beyond determining what the statute at issue means and whether it is constitutional, and to the

-5-

Executive Branch by using the various principles of deference, including *Chevron* deference. . .   For us to decide for ourselves what in fact is the preferable route for addressing the substantive problem at hand would be directly contrary to this constitutional scheme. ***What we may think to be the best or wisest resolution … does not matter***." [Emphasis added]. *Catskill Mountains Chapter of Trout Unlimited, Inc.*, 846 F.3d at 507.

Here, HHS is charged with administering the PREP Act during a national public health emergency. Its interpretation of the PREP Act including the purpose and scope of the Act as applied to the COVID-19 pandemic and the Act's exclusive federal remedial scheme, is sound and reasonable., and thus entitled to deference.

## III.   THE PREP ACT PREEMPTS PLAINTIFF'S STATE LAW CLAIMS

As set forth in Defendant's Opposition to Plaintiff's Motion to Remand, set to be concurrently heard with Defendant's Motion to Dismiss, Plaintiff's claims are completely preempted by the PREP Act.  This Court therefore has jurisdiction over this matter, and is empowered to rule on Defendant's Motion to Dismiss and Motion to Strike.

Plaintiff also cites to *Dupervil v. Alliance Health Operations, LCC*, 2021 WL 355137 (E.D.N.Y. February 2, 2021), in arguing that the PREP Act does not preempt Plaintiff's claims.  However, the *Dupervil* Court also erred in concluding that the PREP Act's administrative remedy and exhaustion requirement defeat its completely preemptive effect. *Dupervil*, 2021 WL 355137 at *9.  LBHC urges this Court to reject the *Dupervil* Court's conclusion because *Dupervil* failed to afford proper *Chevron* deference to HHS' interpretation of the PREP Act, and also misconstrued the nature of the exclusive federal remedy required to afford a statute complete preemptive effect. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 201 (2004).

For example, the Supreme Court has adjudged the Labor Management Relations Act ("LMRA") to be a complete preemption statute. Thereunder, any state law claims that  are substantially dependent on analysis of a collective bargaining agreement are

preempted by Section 301 of the LMRA and must be brought in federal court. *Caterpillar Inc. v. Williams,* 482 U.S. 386, 393 (1987). However, before an employee may bring a Section 301 claim in court, the employee must "'at least attempt to exhaust exclusive grievance and arbitration procedures established by the [collective] bargaining agreement.'" *Campbell v. Kane, Kessler, P.C.,* 144 F. App'x 127, 130 (2d Cir. 2005) (quotation omitted). This is no different than the administrative exhaustion requirement necessary before bringing suit for willful misconduct under the PREP Act.

In contrast to the foregoing complete preemption statute with a remedial scheme which is structurally similar to the PREP Act, the *Dupervil* Court mistakenly relies on *Sullivan v. American Airlines, Inc.*, 424 F.3d 267 (2d.Cir. 2005), which addressed the Railway Labor Act ("RLA"). Unlike the PREP Act, the RLA provides an exclusive federal remedy for only certain types of disputes – between an employee and a carrier. The Act does not provide an exclusive cause of action for disputes between an employee and its union.

Since the PREP Act provides an exclusive federal remedy for *all claims of loss* falling within its scope, the holding and reasoning of the *Sullivan* court, based on the RLA, is inapposite here. The *Dupervil* court was wrong in concluding that the PREP Act is not a complete preemption statute by virtue of its combined administrative and judicial remedial scheme. Like the LMRA discussed above, the PREP Act creates an exclusive federal remedy for claims falling thereunder, involving both an administrative and judicial remedy. This remedial structure was purposefully established by Congress to provide timely and uniform compensation in place of expensive and uncertain litigation, and is expressly "exclusive of any other civil action or proceeding for any claim or suit [the PREP Act] encompasses, except for a proceeding under section 247d-6d . . ." 42 U.S.C. § 247d-6e(d). The *Dupervil* court improperly ignored this unambiguous language and erroneously ruled that "the PREP Act … provides no cause of action at all." *Dupervil*, 2021 WL 355137, at *11.

///

1   As the foregoing clearly demonstrates, the requirement that a federal statute
2   provide an exclusive federal remedy to have complete preemptive effect does not
3   require that the remedy be solely "judicial" in nature. The test is whether the federal
4   statute "wholly displaces the state-law cause of action", which the PREP Act does.
5   *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 8 (2003). The fact that the judicial remedy
6   is combined with an administrative remedy does not change this result. Thus, the
7   *Dupervil* court should not have concluded that the PREP Act's comprehensive federal
8   scheme, which includes a defined federal cause of action accompanied by an
9   administrative remedy, equals "no similar exclusive cause or right of action."

10  **IV.   PLAINTIFFS' CLAIMS FALL SQUARELY WITHIN THE PREP ACT**

11   Here, Plaintiff argues that she does not allege that Decedent's death was causally
12  connected to the administration of a covered countermeasures. Plaintiff further contends
13  that she alleges only failures to act, which are not covered by the PREP Act.  Such
14  arguments ignore the allegations in the Complaint.  HHS has also specifically rejected
15  such argument and stated via the Secretary's Declarations and an AO that claims
16  regarding omissions to act can fall within the immunity protections of the PREP Act.

17   Here, Plaintiff's Complaint expressly relates to the utilization of PPE. Plaintiff
18  alleges that the facility was cited by federal inspectors "for not <u>properly</u> using personal
19  protective equipment to prevent transmission of the illness."   (RFJN Ex. "B"-
20  Complaint, pg. 8, ¶ 23.) [Emphasis added.] Plaintiff attempts to downplay this
21  allegation and argues that it does not establish a "causal link between the administration
22  of a covered countermeasure" and the death of Wallace Dorsey.  Thus, Plaintiff has
23  moved beyond arguing that the allegations in the Complaint do not relate to covered
24  countermeasures, to asking the Court to disregard any allegation in the Complaint which
25  specifically relate to such countermeasures.  The Court, however, must consider the
26  entire Complaint as pled and should decline Plaintiff's request to ignore allegations
27  which Plaintiff now finds to be unfavorable (i.e., those that support PREP Act
28  preemption and immunity).

-8-

Further, even Plaintiff's general claims that "LBHC failed to either create, implement, maintain or train their staff in the <u>proper</u> infection control mechanisms necessary to avoid transmission of disease" by their very nature relate to the use of covered countermeasures, including personal protective equipment ("PPE") and COVID-19 testing, and/or the management and operation of Defendant's countermeasures program, for which Defendant has immunity under the PREP Act. (See Def's Ex. "A"- Complaint, pg. 9, lines 21-24) Plaintiff cannot allege Wallace Dorsey's death was due to a failure to properly implement an effective infection control program to prevent COVID-19 without implicating covered countermeasures under the PREP Act, such as PPE and COVID-19 testing, since such measures are the main line of defense against and the centerpiece of any infection control program used to prevent the spread of the virus that causes COVID-19.  (RFJN, Exhibits "L" through "DD")

Plaintiff further attempts to circumvent the PREP Act by arguing that the Complaint alleges only a failure to use or administer covered countermeasures. Plaintiff's allegations involve a failure to act.  (See Plaintiff's Opposition, pg. 20, lines 2-3.) Plaintiff adopts this rationale out of necessity—not reason. In doing so, she asks this Court to interpret the Complaint in a vacuum.   First, this contention is refuted by the Complaint, in which Plaintiff alleges Defendant was "not <u>properly</u> using personal protective equipment to prevent transmission of the illness." (Def's RFJN Ex. "A"- Complaint, pg. 8, ¶ 23.) [Emphasis added.] Moreover, the Infection Control surveys conducted on March 11, 2020, March 30, 2020 and June 5, 2020, which are the proper subject of judicial notice, show this was not the case. (Def's RFJN Ex. "G".)  Defendant did have and was utilizing PPE and other covered countermeasures as part of its infection control program.   Thus, Plaintiff's allegations clearly pertain to whether Defendant properly utilized PPE and other covered countermeasures and how these measures were administered, distributed and used within the facility, which squarely invoke the PREP Act

///

-9-

As noted in Defendant's moving papers, this case is on point with *Gilbert Garcia et al v. Welltower OpCo Group LLC,* 2021 WL 492581  (February 10, 2021).   In *Garcia*, Plaintiffs alleged "use and misuse of PPE" and that the facility "failed to implement appropriate infection control measures or follow local or public health guidelines in preparing for and preventing COVID-19 spread." *Id*. at *1 The Honorable Judge James V. Selna of the District Court for the Central District of California citing to the OGC Advisory Opinion, noted that "only instances of nonfeasance, i.e., where "defendant's culpability is the result of its failure to make any decisions whatsoever, thereby abandoning its duty to act as a program planner or other covered person" would the PREP Act not apply. *Id*. *7 "Total inaction, therefore, would not be covered by the PREP Act." *Id*.  Judge Selna found that the Complaint did not describe "instances of nonfeasance" but instead "momentary lapses."  *Id* at *8 and *9. Taken as a whole, the Court found the allegations in the Complaint "directly related to covered countermeasures within the meaning of the PREP Act."  *Id.* at *8.

Here, Plaintiff's Complaint concedes that action was taken in the form of the use of PPE and an infection control program.  Plaintiff instead takes issue with how these measures were implemented.  Thus, as in *Garcia*, the Complaint does not describe instances of total inaction, but instead alleges lapses in the standard of care.

The *Garcia* holding should be followed as it furthers the plain legislative intent of the PREP Act and gives proper effect to the express grant of immunity from suit against any claims that relate to the use and administration of covered countermeasures. The *Garcia* holding does not allow a plaintiff to plead around the PREP act to destroy the immunity that Congress plainly created.

Plaintiff further concedes that "non-use of a covered countermeasure" can still fall within the PREP Act.  In the Opposition, Plaintiff states that "The Fourth Declaration and the [January 8, 2021 Advisory] Opinion make clear that conscious non-use of covered countermeasure with regard to one patient in favor of another patient is a prerequisite for any potential immunity."  Plaintiff's reading of the Secretary's Fourth

-10-

Amendment to the Declaration and the January 8, 2021 Advisory Opinion ("AO") is overly narrow. This was merely an example of how non-use of a covered countermeasure can still fall within the PREP Act Act's liability protections.

In the Fourth Amendment to his Declaration, Secretary Azar states that ***"[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.***" [Emphasis added.] (Def's RFJN- Exhibit II", 85 Fed. Reg. 79191, 79194, and 79197.) The January 8, 2021, Advisory Opinion further confirms that the PREP Act can be triggered even in cases of non-use of a covered countermeasure when the non-use is due to prioritization or purposeful allocation "particularly if done in accordance with a public health authority's directive." In the Opinion, the HHS OGC states that the view that the PREP Act does not encompass alleged omissions to use covered countermeasures, "clashes with the plain language of the PREP Act, which extends immunity to anything 'relating to' the administration of a covered countermeasure." (Def's RFJN "HH", Advisory Opinion 21-01, pgs. 2-3.) In the opinion, ***the OGC indicates that the PREP Act is triggered in cases where a plaintiff alleges a failure to use PPE, if the failure was the outcome of some form of decision-making process***. (Def's RFJN "HH", Advisory Opinion 21-01, pg. 3.)

In his January 8, 2021 Advisory Opinion, the OGC further states that "[p]rogram planning inherently involves the allocation of resources and when those resources are scarce, some individuals are going to be denied access to them. Therefore, decision-making that leads to the non-use of covered countermeasures by certain individuals is the grist of program planning, and is expressly covered by the PREP Act." (RFJN Exhibit "HH", pg. 4) As established in Defendant's moving papers, LBHC is a "program planner" that was supervising and administering a program with respect to the administration, dispensing, provision and use of covered countermeasures.

///

1   During the time frame relevant to Plaintiff's Complaint, the CDC, CMS and

2   CDPH had all issued directives pertaining to the preservation of PPE and had instructed

3   facilities to test only symptomatic patients. (See Def's RFJN, Exs. "L", "M", "N", "R",

4   "V", "W", "X" and "AA".) LBHC was following these directives with respect to the

5   prioritization and purposeful allocation of covered countermeasures, as part of its

6   countermeasures and infection control program.

7   In summary, Plaintiff's Complaint takes issue with how infection control

8   measures were implemented.  The Complaint does not describe instances of

9   nonfeasance or total inaction, but instead alleges lapses in the standard of care. The

10   Court should not permit Plaintiff to pretend this case is about the failure to make any

11   decisions whatsoever when the Complaint is not so limited and its unmistakable context

12   leads to the opposite conclusion.  Instead, the Court should follow the lead of the

13   *Garcia* court, give effect to the PREP Act's plain language, and recognize the impact of

14   recent authorities issued by HHS that clarify the scope of the statute that HHS has been

15   charged with administering.

16   **V.   CONCLUSION**

17   Plaintiff's Complaint should be dismissed without leave to amend.  Defendant

18   further respectfully request the Court issue an order striking out the unsubstantiated

19   claims for attorney's fees and punitive damages and the immaterial, impertinent and

20   scandalous allegations in the Complaint as set forth in the Notice to this Motion and

21   Points and Authorities in support thereof.

22   Dated:  March 15, 2021                         WILSON GETTY LLP

23

24                                                 By: /s/ Kim S. Cruz
                                                        William C. Wilson
25                                                      Kim S. Cruz
                                                        Ryan G. Canavan
26
                                                   Attorneys for Defendant, Attorneys for Defendant
27                                                 LONG BEACH HEALTHCARE CENTER, LLC
                                                   dba LONG BEACH HEALTHCARE CENTER
28

<u>***Ebony Stone, Individually and as heir and SII to Wallace Dorsey v. Long Beach Healthcare Center, LLC***</u>

**United States District Court, Central District of California**
**Case No. 2:21-cv-00326-JFW-PVCx**
**\*\*\***
**PROOF OF SERVICE**

I am employed in San Diego County.  I am over the age of 18 and not a party to this action.  My business address is 12555 High Bluff Drive, Suite 270, San Diego, California 92130.

On <u>**March 15, 2021**</u>, I served the foregoing documents, described in this action as:

- **DEFENDANT, LONG BEACH HEALTHCARE CENTER, LLC dba LONG BEACH HEALTHCARE CENTER REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION AND MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f))**

As follows:

Dawn M. Smith, Esq.
Smith Clinesmith, LLP
325 N. St. Paul St., 29th Floor
Dallas, TX 75201
T: 214.953.1900
F: 214.953.1901
Email: dawn@smithclinesmith.com
Email: service@smithclinesmith.com
*Counsel for Plaintiff*

**[X]**    **By CM/ECF ELECTRONIC DELIVERY:**    In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov.

**[X]**    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on <u>**March 15, 2021**</u> at San Diego, California.

Tonya Jamois

---

**PROOF OF SERVICE**