| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |

### CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **CV 21-326-JFW(PVCx)** | Date: March 26, 2021 |
| Title: | Ebony Stone -v- Long Beach Healthcare Center, LLC, et al. | |

**PRESENT:**

      **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING PLAINTIFFS' MOTION TO REMAND [filed 1/26/2021; Docket No. 13];**

                                   **ORDER DENYING AS MOOT DEFENDANT LONG BEACH HEALTHCARE CENTER, LLC dba LONG BEACH HEALTHCARE CENTER'S MOTION TO DISMISS (FRCP 12(b)(6)) and MOTION TO STRIKE (FRCP 12(f)) [filed 2/19/2021; Docket No. 20]**

      On January 26, 2021, Plaintiff Ebony Stone ("Plaintiff"), individually and as successor in interest to the Estate of Wallace Dorsey, filed a Motion to Remand. On February 8, 2021, Defendant Long Beach Healthcare Center LLC dba Long Beach Healthcare Center ("Defendant" or "LBHC") filed its Opposition. On February 24, 2021, Defendant filed a Notice of Supplemental Authority.

      On February 19, 2021, Defendant filed a Motion to Dismiss (FRCP 12(b)(6)) and Motion to Strike (FRCP 12(f)) ("Motion to Dismiss and Strike"). On March 8, 2021, Plaintiff filed an Opposition to Defendant's Motion to Dismiss and Strike and filed a Reply in support of her Motion to Remand. On March 15, 2021, Defendant filed a Reply in support of its Motion to Dismiss and Strike.

      Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for March 29, 2021 is hereby vacated and the matters are taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   **Procedural History**

On December 10, 2020, Plaintiff filed a Complaint against Defendant in Los Angeles County Superior Court, alleging claims for: (1) violations of the Elder and Dependent Adult Civil Protection Act (California Welfare & Institutions Code §§ 15600, *et seq.*); (2) negligence; and (3) wrongful death.  In her Complaint, Plaintiff alleges that Wallace Dorsey (the "Decedent") was admitted to the Long Beach Healthcare Center, a skilled nursing facility, for long-term care on August 8, 2019.  Plaintiff alleges that Decedent suffered abuse and neglect, was unable to obtain necessary dialysis, and ultimately contracted COVID-19 which resulted in his death on April 16, 2020.  Plaintiff alleges, *inter alia*, that Decedent died as a result of Defendant's failure to adequately staff Long Beach Healthcare Center and failure to properly create, implement, maintain, or train their staff in infection control measures to prevent the spread of COVID-19 in the facility.  In support of that allegation, and by way of example, Plaintiff notes that, on July 21, 2020, three months after the Decedent's death, Defendant was cited by federal inspectors "for not having requisite knowledge for cleaning and disinfecting surfaces that may have become contaminated, and for not properly using personal protective equipment to prevent transmission of illness." Complaint ¶ 23.

On January 13, 2021, Defendant filed a Notice of Removal, alleging that this Court has jurisdiction on the grounds that: (1) Plaintiff's claims are completely preempted by the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247-6d and 247-6e; (2) the action raises a substantial and important federal issue, citing *Grable & Sons Metal Products v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005); and (3) removal is proper under the federal officer statute (28 U.S.C. § 1442(a)(1)) because Defendant was acting under the direction of a federal officer when it engaged in the allegedly tortious conduct.  Plaintiff challenges the removal of this action and moves to remand.

   B.   **The PREP Act**

Passed in 2005, the PREP Act authorizes the Secretary of Health and Human Services ("HHS") to issue a declaration determining that "a disease or other health condition or other threat to health constitutes a public health emergency."  42 U.S.C. § 247d-6d(b).  If applicable, the PREP Act provides immunity from liability for "all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."[1]  42 U.S.C. § 247d-6d(a)(1).  If immunity applies, the injured person or their survivors may seek compensation from the Countermeasures Injury Compensation Program – a regulatory program that provides reimbursement for some losses associated with the use of covered countermeasures.  42 U.S.C. § 247d-6e.  The only exception to the Act's immunity is when the injury occurs through willful misconduct.  In these instances, the PREP Act provides procedural

---

[1] Under the PREP Act, covered countermeasures include: (1) a qualified "pandemic or epidemic product"; (2) a "security countermeasure"; (3) a drug, biological product, or device that the United States Food and Drug Administration ("FDA") has authorized for emergency use; and (4) a "respiratory protective device" that is approved by the National Institute for Occupational Safety and Health ("NIOSH").  42 U.S.C. § 247d-6d(i)(1).

rules that govern the injured person's claim. 42 U.S.C. § 247d-6d(d). For example, they must file in the U.S. District Court for the District of Columbia and the burden of proof is clear and convincing evidence. *Id.*; 42 U.S.C. § 247d-6d(c).

On March 10, 2020, the HHS Secretary issued a Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 ("March 10, 2020 Declaration"), which declared the COVID-19 pandemic a public health emergency under the PREP Act. 85 Fed. Reg. 15198-01. On December 3, 2020, the HHS Secretary issued a Fourth Amendment to his March 10, 2020 Declaration (the "Fourth Amendment").[2] 85 Fed. Reg. at 79190 (Dec. 9, 2020). In the Fourth Amendment, the HHS Secretary defined the "administration" of a covered countermeasure as follows:

> Administration of the Covered Countermeasure means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for the purpose of distributing and dispensing countermeasures.

> Where there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute "relating to . . . the administration to . . . an individual" under 42 U.S.C. 247d-6d. For example, consider a situation where there is only one dose . . . of a COVID-19 vaccine, and a person in a vulnerable population and a person in a less vulnerable population both request it from a healthcare professional. In that situation, the healthcare professional administers the one dose to the person who is more vulnerable to COVID-19. In that circumstance, the failure to administer the COVID-19 vaccine to the person in a less-vulnerable population "relat[es] to . . . the administration to" the person in a vulnerable population. The person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population. Prioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.

85 Fed. Reg. at 79197. In the Fourth Amendment, the HHS Secretary also: (1) opined that "[t]here are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a uniform interpretation of the PREP Act;" and (2) clarified that the Declaration

---

[2]To date, the HHS Secretary has issued seven amendments to the Declaration. *See* First Amendment, 85 Fed. Reg. 21012 (Apr. 15, 2020); Second Amendment, 85 Fed. Reg. 35100 (June 8, 2020); Third Amendment, 85 Fed. Reg. 52136 (Aug. 24, 2020); Fourth Amendment, 85 Fed. Reg. 79190 (Dec. 9, 2020); Fifth Amendment, 86 Fed. Reg. 7872 (Feb. 2, 2021); Sixth Amendment, 86 Fed. Reg. 9516 (Feb. 16, 2021); Seventh Amendment, 86 Fed. Reg. 14462 (Mar. 16, 2021)

"must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and Emergency Preparedness Act and the Declaration (Advisory Opinions)" and expressly incorporated the Advisory Opinions for that purpose. 85 Fed. Reg. at 79191, 79197.

On January 8, 2021, HHS's Office of the General Counsel ("OGC") issued an Advisory Opinion, which opines that the PREP Act "is a 'complete preemption' statute" because it establishes "a federal cause of action, administrative or judicial, as the only viable claim." Exhibit EE (Docket No. 15-31). The January 8, 2021 Advisory Opinion also opines that "the Fourth Amendment to the Secretary's Declaration supports the *Grable* doctrine." *Id.* The Advisory Opinion, however, cautions that "[i]t is not a final agency action or a final order. It does not have the force or effect of law." *Id.*

## II.     LEGAL STANDARD

A motion to remand is the proper procedure for challenging removal. *See N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1038 (9th Cir.1995). The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *see also Prize Frize, Inc. v. Matrix, Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999). Consequently, if a plaintiff challenges the defendant's removal of a case, the defendant bears the burden of establishing the propriety of the removal. *See Gaus*, 980 F.2d at 566; *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.1996) (citations and quotations omitted) ("Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."*)*.

## III.     DISCUSSION

The Court concludes that Defendant has failed to establish that this action was properly removed under any of its three theories of jurisdiction.

### A.     Complete Preemption

In its first theory, Defendant argues that this action was properly removed based on federal question jurisdiction because Plaintiff's state law claims are completely preempted by the PREP Act. The Court rejects this argument.

#### 1.     Legal Standard for Complete Preemption

"Removal based on federal-question jurisdiction is reviewed under the longstanding well-pleaded complaint rule." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018). The "well-pleaded complaint rule,' provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2003) (*quoting Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). The federal issue "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Id.* (*quoting Gully v. First Nat. Bank*, 299 U.S. 109, 113 (1936) (holding that the federal controversy cannot be "merely a possible or

conjectural one")). "Thus the rule enables the plaintiff, as 'master of the complaint,' to 'choose to have the cause heard in state court' 'by eschewing claims based on federal law.'" *Id*. (*quoting Caterpillar*, 482 U.S. at 399). As the Supreme Court stated in *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987):

> Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint . . . . [I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.

482 U.S. at 392-93.

Complete preemption is an exception to the well-pleaded complaint rule. "[T]he complete preemption doctrine, provides that 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1243–44 (9th Cir. 2009) (*citing Toumajian v. Frailey*, 135 F.3d 648, 653 (9th Cir. 1998) (*quoting Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). If complete preemption applies, "the state-law claim is simply 'recharacterized' as the federal claim that Congress made exclusive." *Hansen*, 902 F.3d at 1058 (*quoting Vaden v. Discover Bank*, 556 U.S. 49, 61 (2009)). "[W]hen a federal statute wholly displaces the state-law cause of action through complete preemption," the state claim can be removed. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Complete preemption is extremely "rare." *Hansen,* 902 F.3d at 1057. The Supreme Court has found complete preemption applicable to only three federal statutes. *See City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020) (noting that complete preemption applies only to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, § 502(a) of the Employee Retirement Income Security Act of 1974, and §§ 85 and 86 of the National Bank Act). While discussing the limited nature of the doctrine, the Ninth Circuit held that "complete preemption for purposes of federal jurisdiction under Section 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland,* 969 F.3d at 906 (*citing Hansen*, 902 F.3d at 1057). Thus, before complete preemption can apply to a plaintiff's state law claims, the "the claims at issue must fall within the scope of the relevant federal statute." *Jackson v. Big Blue Healthcare, Inc.*, 2020 WL 4815099, at *3–4 (D. Kan. Aug. 19, 2020) (*citing Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003)).

### 2.      Plaintiff's Claims Are Not Completely Preempted

The parties disagree on whether Plaintiff's claims fall within the scope of the PREP Act. Plaintiff argues the PREP Act does not apply to her claims because her claims are based on a failure to properly implement an effective infection control program (including by failing to properly train staff) rather than the use or misuse of a covered countermeasure. Defendant argues that the PREP Act applies to Plaintiff's claims because the HHS Secretary's December 3, 2020 Amendment makes clear that the failure to use a covered countermeasure can fall within the PREP Act's protections and that the failure to properly implement an effective infection control program by its very nature implicates the use of covered countermeasures such as, for example, personal

protective equipment and COVID-19 testing.

Although the HHS Secretary's Fourth Amendment makes clear that an "inaction claim" is not necessarily beyond the scope of the PREP Act, such claims only fall under the scope of the PREP Act where: (1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual. 85 Fed. Reg. at 79197 (illustrating a causal relationship between (1) administering and (2) not administering a covered countermeasure where person-A "was able to receive the [single covered countermeasure] only because it was not administered to" person B). Thus, pursuant to the HHS Secretary's December 3, 2020 Amendment, there is only immunity for "inaction claims" when the failure to administer a covered countermeasure to one individual has "a close causal relationship" to the administration of that covered countermeasure to another individual. *Anson v. HCP Prairie Village KS Opco LLC*, 2021 WL 308156 (D. Kan. Jan. 29, 2021). For example, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public authority's directive, can fall within the PREP Act and th[e] Declaration's liability protections." 85 Fed. Reg. at 79197;  Exhibit EE (Docket No. 15-31). Other "inaction claims" may not.

In this case, Plaintiff does not allege that Decedent's death was causally connected to the administration or use of any covered countermeasure. Instead, Plaintiff alleges "precisely the opposite" – that it was inaction, rather than action, by Defendant that caused Decedent's death. *Anson v. HCP Prairie Village KS Opco LLC*, 2021 WL 308156 (D. Kan. Jan. 29, 2021) (*quoting Eaton v. Big Blue Healthcare, Inc.*, 2020 WL 4815085, at *7–8 & n.13 (D. Kan. Aug. 19, 2020)). Indeed, the gravamen of Plaintiff's Complaint is that Defendant failed "to either create, implement, maintain, or train their staff in the proper infection control mechanisms necessary to avoid the transmission of disease." Complaint ¶ 25; *see also id.* ¶¶ 23, 24, 26, 27, 28. Numerous courts have concluded that allegations like these do not fall within the scope of the PREP Act. *See, e.g., Estate of McCalebb v. AG Lynwood,* LLC, 2021 WL 911951, at *1, 5 (C.D. Cal. Mar. 1, 2021) (concluding that the action does not appear to be about a purposeful allocation of scarce resources where Plaintiff alleged that, *inter alia*, Defendant failed to follow, implement, and adhere to all CDC guidelines on how to protect and treat Decedent in light of the risk of COVID-19, and where "the gravamen of the Complaint is that Defendant was generally neglectful in operating the Facility"); *Robertson v. Big Blue Healthcare, Inc.*, 2021 WL 764566, at *2, 7-9 (D. Kan. Feb. 26, 2021) (concluding that claims premised on a failure to take preventative measures to stop the spread of COVID-19, including allegations that the defendants failed to "follow proper infection control protocols" and "provide personal protective equipment ('PPE') to staff" do not fall within the scope of the PREP Act).

Although Plaintiff mentions in her Complaint that Defendant was cited for not properly "using" personal protective equipment three months *after* Decedent's death, there are no allegations linking Decedent's death to the *use* of that personal protective equipment or linking Decedent's death to the *purposeful* allocation of personal protective equipment to other individuals. Instead, Plaintiff appears to be merely using that citation as an example of Defendant's alleged failure to implement effective control policies in its facility. *See Estate of McCalebb*, 2021 WL 911951, at *5 ("While Plaintiffs refer to the failure to provide adequate PPE (and training in its use), this allegation is one of 19 claims of negligence in a complaint that describes overall inattention rather than conscious decision-making about covered countermeasures while delivering care."); *Anson*, 2021 WL 308156, at *10 (quotations and citations omitted ("[E]ven if the court were

prepared to assume that the Petition alleges conduct that qualifies as administration or use of a covered countermeasure" within the meaning of the PREP Act, the statute still requires a causal connection between the injury and the use or administration of covered countermeasures."). As one district court stated:

> Suffice it to say that the Court is not convinced that a facility using covered countermeasures <u>somewhere</u> in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility. The PREP Act still requires a causal connection between the injury and the use or administration of covered countermeasures, and that link is not present under Defendants' interpretation.

*Brown v. Big Blue Healthcare*, 480 F. Supp. 3d 1196, 1206 (D. Kan. 2020).

More importantly, even assuming that the PREP Act might arguably provide Defendant immunity on some of Plaintiff's claims,[3] the Court concludes that the PREP Act does not satisfy the Ninth Circuit's two pronged complete preemption test. *City of Oakland*, 969 F.3d at 905. The doctrine of complete preemption applies in very limited circumstances; this is not the "rare" statute where complete preemption applies. *Hansen*, 902 F.3d at 1057. First, the PREP Act does not completely replace state law claims related to COVID-19. As many courts have held, the PREP Act does not prevent plaintiffs from bringing state law claims based on an alleged failure to use covered countermeasures. *See, e.g., Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 2020 WL 4671091, at *1, *9 (D.N.J. Aug. 12, 2020) (holding that the failure to "observe a wide range of appropriate safety precautions" "would not be preempted by the PREP Act, which is designed to protect those who employ countermeasures, not those who decline to employ them"); *Jackson*, 2020 WL 4815099, at *8 (holding the PREP Act does not apply to "the non-administration or non-use of covered countermeasures" and concluding that the PREP Act did not apply to plaintiff's claims because "[d]efendants fail[ed] to point to any claim in the complaint where Plaintiff alleges that the administration or use of any of these things [covered countermeasures] caused the decedent's death"); *Estate of Jones v. St. Jude Operating Co., LLC*, 2021 WL 900672, at *4-6 (D. Or. Feb. 16, 2021), *report and recommendation adopted by* 2021 WL 886217 (D. Or. Mar. 8, 2021) (concluding that the doctrine of complete preemption does not apply, and citing numerous cases in support thereof). These cases plainly hold that the PREP Act does not "wholly displace" state law claims that implicate healthcare entities and COVID-19. *Parker v. St. Jude Operating Co., LLC*, 2020 WL 8362407, at *5 (D. Or. Dec. 28, 2020)*; Beneficial Nat'l Bank*, 539 U.S. at 8.

Second, the PREP Act does not provide a substitute cause of action for Plaintiff's claims based on Defendant's alleged negligence. "Instead, when applicable, the PREP Act provides immunity to defendants on state law negligence claims." *Parker*, 2020 WL 8362407, at *5 . *See also Dupervil v. Alliance Health Operations, LLC*, __ F. Supp. 3d __, 2021 WL 355137, at *9 (E.D.N.Y. Feb. 2, 2021) ("[I]t is important to note that the PREP Act is, at its core, an immunity statute; it does not create rights, duties, or obligations."). As the district court in *Estate of McCalebb v. AG Lynwood, LLC*, 2021 WL 911951 (C.D. Cal. Mar. 1, 2021) recently stated:

---

[3]The Court does not conclude that Defendant is entitled to PREP Act immunity on any of Plaintiff's claims. The Los Angeles County Superior Court will make that determination on remand.

> Other than for willful misconduct, Congress provided no federal remedy that could be pursued through a federal cause of action. Instead, Congress established an emergency fund to provide adequate compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure. The HHS Secretary is responsible for establishing procedures to administer this compensation program. The Secretary's determination of eligibility and compensation under the program is final and not subject to judicial review.
>
> In this case, Plaintiffs have brought negligence claims. If their negligence claims were preempted, then Plaintiffs would have to look to the Secretary's compensation program for relief. Under Ninth Circuit law, such administrative relief is not the type of displacement remedy that triggers complete preemption. For purposes of complete preemption, the displacement remedy must supply a federal cause of action. An administrative remedy will not suffice because the complete-preemption doctrine rests on the theory that any state claim within its reach is transformed into federal claims. This transformation is the source of original federal jurisdiction by supplying a federal cause of action.
>
> The PREP Act does not create original federal jurisdiction over a covered claim for negligence or recklessness. On the contrary, Congress precluded it by vesting exclusive jurisdiction in the HHS Secretary. In this circumstance, allowing removal to federal court on complete-preemption grounds is internally inconsistent: the district court must have jurisdiction for removal to be proper, but the court must then dismiss the removed case because only the administrative agency, not federal courts, have primary jurisdiction. Thus, the PREP Act does not completely preempt such covered claims.

2021 WL 911951, at * 4 (internal quotations, citations, footnotes, and alterations omitted).[4]

Finally, to the extent that Defendant relies on the Office of General Counsel's January 8, 2021 Advisory Opinion and the HHS Secretary's Fourth Amendment to the March 10, 2020 Declaration in support of its complete preemption argument,[5] the Court agrees with and adopts the

---

[4] Moreover, to the extent Plaintiff's claims are based on willful misconduct (and assuming any of those claims actually fall within the scope of the PREP Act), the Court would, in any event, be barred from exercising jurisdiction over those claims because such an action shall be filed and maintained only in the United States District Court for the District of Columbia. *See* 42 U.S.C. § 247d-6d(e)(1).

[5] To the extent that Defendant relies on the Acting Secretary's Fifth Amendment to the March 10, 2020 Declaration, the Court concludes that the Fifth Amendment does not support Defendant's complete preemption argument. On January 28, 2021, the Acting HHS Secretary issued the Fifth Amendment to the March 10, 2020 Declaration to "add additional categories of Qualified Persons authorized to prescribe, dispense, and administer COVID-19 vaccines that are covered countermeasures." 86 Fed. Reg. 7872 (Feb. 2, 2021). The Fifth Amendment stated that including additional healthcare professionals as Qualified Persons would achieve the following two purposes: (1) these healthcare professionals would be afforded liability protections in accordance

analysis of *Dupervil v. Alliance Health Operations, LCC*, __ F. Supp. 3d __, 2021 WL 355137, at *10 (E.D.N.Y. Feb. 2, 2021), *Estate of Jones v. St. Jude Operating Company, LLC*, 2021 WL 900672, at *6-7 (D. Or. Feb. 16, 2021), *report and recommendation adopted by* 2021 WL 886217 (D. Or. Mar. 8, 2021), and *Evon Smith v. Colonial Care Center, Inc.*, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021). Accordingly, the Court concludes that HHS Secretary's and the OGC's interpretations of this Court's jurisdiction under the PREP Act are not entitled to deference and lack the "power to persuade."

Accordingly, the Court concludes that Plaintiff's claims are not completely preempted by the PREP Act.

### B. Embedded Question of Federal Law

In its second theory of subject matter jurisdiction, Defendant argues that there is embedded federal question jurisdiction over Plaintiff's claims, citing *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). In order to establish federal jurisdiction due to a "substantial, embedded question of federal law," a "state law claim [must] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). In other words, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). In addition, "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim 'necessarily raise[s]' a disputed federal issue, as *Grable* separately requires. The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. "[T]he mere use of a federal statute as a predicate for a state law cause of action does not necessarily transform that cause of action into a federal claim." *Nevada v. Bank of America Corp.*, 672 F.3d 661, 675 (9th Cir. 2012). Nor does "the question whether a particular claim arises under federal law depend . . . on the novelty of the federal issue." *Id.* (*quoting Merrell Dow Pharms., Inc. v.*

---

with the PREP Act; and (2) any State law that would otherwise prohibit these health care professionals from prescribing, dispensing, or administering COVID-19 vaccines was preempted. The Fifth Amendment then conducted a narrow preemption analysis with respect to state laws that would otherwise prohibit the additional health care professionals covered by the Fifth Amendment from prescribing, dispensing, or administering COVID-19 vaccines, and concluded that "[t]he plain language of the PREP Act makes clear that there is complete preemption of state law *as described above*" and that preemption of state law is "justified to respond to the nation-wide public health emergency caused by COVID-19." 86 Fed. Reg. at 7874 (emphasis added). Based on the apparent narrow scope of the Fifth Amendment and the limited focus of its preemption analysis, the Court concludes that the Fifth Amendment was not intended to and did not address the complete preemption analysis at issue in this Order. Instead, the Fifth Amendment uses the term "complete preemption" to refer "not to the doctrine of complete preemption for purposes of federal-question jurisdiction, but rather to ordinary, defensive preemption." *Dupervil*, 2021 WL 355137, at *11 n.3.

*Thompson*, 478 U.S. 804, 817 (1986)).

The Court concludes that Plaintiff's claims do not present an embedded question under *Grable*. The federal issue raised relates to Defendant's *defense*, not the claims alleged by Plaintiff. As such, the federal issue is not necessarily raised. *See, e.g., Robertson v. Big Blue Healthcare, Inc.*, 2021 WL 764566, at * (D. Kan. Feb. 26, 2020) ("To be certain, Defendants intend to assert the PREP Act as a defense to Plaintiff's claim. But that is not enough."); *Dupervil*, 2021 WL 355137, at *14 ("But this only shows that Defendants may have an affirmative defense to Plaintiff's claims, not that Plaintiff's claims are affirmatively premised on, or on their face necessarily require resolution of, the PREP Act.").

To the extent Defendant relies on the Office of General Counsel's January 8, 2021 Advisory Opinion and the HHS Secretary's Fourth Amendment to the March 10, 2020 Declaration in support of its *Grable* doctrine argument, the Court agrees with and adopts the analysis of *Dupervil*, 2021 WL 355137, at *14 and *Estate of Jones*, 2021 WL 900672, at *6-7, and concludes that the HHS Secretary's and the OGC's interpretations of this Court's jurisdiction under the PREP Act are not entitled to deference and lack the "power to persuade."
.

Accordingly, the Court concludes that it does not have subject matter jurisdiction based on embedded federal question grounds.

### C.   Federal Officer Removal

Finally, in its third theory, Defendant argues that federal officer removal is available because it was "acting under" the direction of a federal officer. Specifically, Defendant argues that it was acting pursuant to directives issued by the Centers for Disease Control and the Centers for Medicare and Medicaid Services ("CMS"), and the California Department of Public Health ("CDPH") that were highly detailed and specifically aimed at helping achieve the federal government's efforts to stop or limit the spread of COVID-19.

Federal officer removal is available under 28 U.S.C. § 1442(a) if "(a) [the removing party] is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). In this case, Defendant has failed to establish it acted "pursuant to a federal officer's directions." Specifically, the directives that Defendant relies on are nothing more than "general regulations and public directives regarding the provision of medical services." *Martin v. Serrano Post Acute LLC*, 2020 WL 5422949 (C.D. Cal. Sept. 10, 2020) (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007)); *see also Saldana v. Glenhaven Healthcare LLC*, 2020 WL 6713995 (C.D. Cal. Oct. 14, 2020) (holding that where the defendants argued that "in taking steps to prevent the spread of COVID-19, [they] did so in compliance with CDC and CMS directives, which were aimed at helping achieve the federal government's efforts at stopping or limiting the spread of COVID-19," such general regulations and public directives were "insufficient" to confer jurisdiction under the federal officer removal statute). In addition, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official . . . even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Martin*, 2020 WL 5422949 (quoting *Watson*,

551 U.S. 142, 153).

Accordingly, the Court concludes that Defendant has failed to demonstrate that removal was proper under the federal officer removal statute.[6]  *See* 28 U.S.C. § 1442(a)(1).

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff's Motion is **GRANTED,** and this action is **REMANDED** to Los Angeles County Superior Court for lack of subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c).  "To be clear, the Court makes no decision as to whether Plaintiff's claims are barred by the PREP Act under principles of ordinary defensive preemption, or otherwise. That issue is for the state court to decide."  *Dupervil,* 2021 WL 355137, at *13.

Defendant's Motion to Dismiss and Strike is **DENIED as moot**.


IT IS SO ORDERED.

---

[6]Because the Court concludes that Defendant has failed to demonstrate that Defendant acted "pursuant to a federal officer's directions," the Court need not address the remaining requirements for removal under 28 U.S.C. § 1442(a).